# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MONTANA

# BILLINGS DIVISION

| | | |
|---|---|---|
| TREBRO MANUFACTURING, INC., a Montana Corporation, | ) ) ) | CV 13-36-BLG-RFC |
| Plaintiff, | ) ) | |
| vs. | ) ) | **ORDER** |
| FIREFLY EQUIPMENT, LLC, a Utah limited liability company, and STEVEN R. APOSHIAN, | ) ) ) ) | |
| Defendants. | ) ) ) | |

Plaintiff has filed a Motion for Preliminary Injunction and Defendants responded. An evidentiary hearing was held on April 11, 2013.

## BACKGROUND

Plaintiff Trebro Manufacturing ("Trebro") is owned and operated by Gregg Tvetene and in the business of manufacturing and selling sod harvesting equipment and parts therefor. Trebro's principal place of business is in Billings, Montana and Trebro employs eighteen people worldwide. Defendant Steven Aposhian ("Aposhian") was an employee of Trebro from February 1, 2006 to

August 30, 2007. During this time, he was employed as a Mechanical and Software Engineer in the Research and Development Department. During this period of employment, he wrote the code for a computer program called "AutoSlab". Trebro has registered the program with the U.S. Copyright Office (Reg. No. TX 7-610-434) (the "Copyright"). The registration has an effective date of April 26, 2010.

In 2010, Aposhian formed FireFly Equipment. FireFly was initially a distributor of replacement parts for sod harvesters. FireFly designed and currently offers for sale the ProSlab 150 harvester, which is an improved sod harvester. FireFly is a direct competitor of Trebro. FireFly has submitted four patent applications on the novel features of the ProSlab 150.

On February 11-15, 2013, an employee of Trebro attended the Turf Grass Producers International Midwinter Conference in San Antonio, Texas. FireFly was at the trade show and indicated to an employee of Trebro that he had sold ProSlab 150 sod harvesters and was working on manufacturing and selling more.

On March 12, 2013, Trebro entered into a Patent License and Assignment Agreement with 1045929 Ontario Limited, the previous owner of U.S. Patent Nos. 8,336,638 ("638") and 7,721, 814 ("814"). With the Patent License and Assignment Agreement, Trebro also acquired ownership of the patents and "any

accrued cause of action related thereto." Trebro filed this lawsuit on March 14, 2013, just two days after entering into the Patent License and Assignment Agreement.

On March 27, 2013, FireFly filed a Request for Ex Parte Reexamination and Statements of Substantial New Questions of Patentability of the '638 Patent with the U.S. Patent & Trademark Office. Plaintiff anticipates it will take roughly a year for the U.S. Patent and Trademark Office to decide the validity issue. However, this is not a basis for this Court to defer ruling on the Motion for Preliminary Injunction.

A major trade show for the sod harvester industry is scheduled for April 18 and 19, 2013. Plaintiff originally alleged that the ProSlab 150 harvester infringes the '638 and '814 Patents owned by Plaintiff and Trebro's copyright in the "AutoSlab" program, however, at the evidentiary hearing Plaintiff agreed to limit the basis for the preliminary injunction to the '638 Patent only. Plaintiff seeks an injunction to prevent FireFly from manufacturing, importing, using, offering for sale, selling, causing to be sold, or in any way distributing the ProSlab 150 harvester.

## STANDARD OF REVIEW

A preliminary injunction is an extraordinary remedy for which the moving party bears the burden of proving the prerequisites by clear and convincing evidence. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 441 (1974). A party seeking a preliminary injunction "must demonstrate either: (1) a likelihood of success on the merits and a possibility of irreparable injury, or (2) the existence of serious questions on the merits and a balance of hardships tipping in its favor." *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1400 (9th Cir. 1992). Furthermore, where the public interest is involved, a court must determine whether the balance of public interests supports the issuance or denial of an injunction. *Caribbean Marine Services v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

A preliminary injunction allows the Court to preserve the status quo during the pendency of a case so that the movant will not suffer irreparable harm. *See Textile Unlimited, Inc. v. A. BNH and Co, Inc.,* 240 F.3d 781, 786 (9th Cir. 2001). The Court should apply a "more likely than not" standard in determining patent infringement-related preliminary injunction questions. *Revision Military, Inc. v. Balboa Manufacturing Co.,* 700 F.3d 524, 526 (Fed. Cir. 2012).

In order to establish a likelihood of success on the merits in a patent infringement case, a plaintiff must establish that its patent is valid and enforceable and that the accused product infringes the patent in suit:

> In order to demonstrate a likelihood of success on the merits, [a patent owner] must show that, in light of the presumptions and burdens that will inhere at trial on the merits, (1) [the patent owner] will likely prove that [the accused infringer] infringes the . . . patent[-in-suit], and (2) [the patent owner's] infringement claim will likely withstand [an accused infringer's] challenges to the validity and enforceability of the . . .patent.

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350-51 (Fed. Cir. 2001).

If a defendant raises a substantial question concerning infringement that a plaintiff cannot prove "lacks substantial merit," the preliminary injunction should not issue. *See id.*

There are two steps in an infringement analysis. "[T]he first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of being infringed." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). To establish literal infringement, every limitation set forth in a claim must be found in an accused

system exactly. *Southwell Tech., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995), *cert. denied* 516 U.S. 987. There can be no infringement as a matter of law if even a single claim limitation is missing in the accused system. *Texas Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996) *cert. denied* 117 S.Ct. 1818 (1997).

## ANALYSIS

### I.  Likelihood of Success on the Merits

The '638 Patent is generally directed to a sod harvester that uses an inclined conveyor to create a gap between consecutive slabs of sod as the slabs are carried up from the ground to the stacking head.

The only independent claim in the '638 Patent, reads as follows:

> 1. A sod harvester for harvesting a sod piece from a ground surface and stacking said sod piece on a support, the sod harvester comprising:
>
> a) a sod cutting knife for cutting said sod piece from said ground surface;
>
> b) at least one inclined conveyor movable at faster than ground speed;
>
> c) a substantially horizontal conveyor, wherein said at least one inclined conveyor is adapted to carry said sod piece from said cutting knife to said substantially horizontal conveyor; and

> d) a sod carrier movable between a first position above said
> horizontal conveyor and a second position, wherein, in said
> first position, said sod carrier is adapted to removably secure
> said sod piece to said sod carrier when said sod piece is on
> said horizontal conveyor, wherein said sod carrier is adapted
> to release said sod piece at said second position, wherein said
> horizontal conveyor is moveable in a vertical direction toward
> said sod carrier.

Limitation d) is the only limitation relevant to the comparison between the '638 Patent and the ProSlab 150.

Testimony at the evidentiary hearing by Aposhian and a close viewing of videos presented by the parties demonstrated that the ProSlab 150 does not raise the horizontal bed frame, as is required by the '638 Patent. The conveyor receives slabs from the elevator conveyor. When the slab is in position under the sod carrier 120 the pickup conveyor belt 310 changes shape. This shape change is similar to that of a parallelogram and lifts the slab 102a up so the sod carrier 120 can grab it. The lifting motion is accomplished by rocking the arms 302a and 302b about axis 302a1 and 302b1. The drive pulley 301b and idler pulley 301a do not move vertically.

Because the belt changes shape to effect the lifting of the sod slab, there is no need for the entire frame and drive mechanisms to move. Not moving

additional parts requires less power and causes the ProSlab 150 to accomplish more in a shorter time.

When comparing the two devices, the ProSlab 150 does not raise the conveyor bed frame. Because of this, it does not infringe on the '638 Patent and there is not a likelihood of success on the merits.

## II.    Irreparable Harm

Plaintiff's alleged irreparable harm is that it might lose market share and customers. Gregg Tvetene was not able to testify that Trebro has suffered actual harm, but he did state that loss of a sale of a sod harvester will result in the loss of a $50,000 gross profit, which could result in employees being laid off.

"[S]peculative injury does not constitute irreparable injury." *Colorado River Indian Tribes v. Town of Parker*, 776 F.2d 846, 849 (9th Cir. 1985) (citing *Goldie's Bookstore, Inc. v. Superior Court of State of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984) (loss of goodwill and customers was speculative and thus, not irreparable harm)).

In *DPC Industries*, this Court held that even something as extreme as the potential "closure of an existing business constitutes a hardship that is primarily economic in nature." *DPC Industries*, 2013 WL at *1 (citing *Lydo Enterprises, Inc. v. City of Las Vegas*, 745 F.2d 1211, 1211, 1213 and 1216 (9th Cir. 1984)).

"Purely monetary injuries are not normally considered irreparable." *Id.* (citing *Lydo*, 745 F.2d at 1213).

Plaintiff's alleged lost customers and theoretical loss of market share can be compensated through an award of lost profits or a reasonable royalty. This is purely monetary relief. Plaintiff has not demonstrated that it will suffer irreparable injury.

### III. Validity of Patent

On March 27, 2013, FireFly filed a Request for Ex Parte Reexamination and Statements of Substantial New Questions of Patentability of the '638 Patent with the U.S. Patent & Trademark Office.

There is a controversy that the feature of raising the horizontal conveyor towards the sod carrier was not a novel or non-obvious feature for sod harvesters. This feature was known in the sod harvesting industry, and was also known by the inventors and assignee of the '638 Patent. The testimony of Gregg Tvetene establishes that several sod harvesters built in the past have the feature of raising the horizontal conveyor towards the sod carrier. Claim 1 is not novel or non-obvious.

This is a question best left to the U.S. Patent & Trademark Office, but the Court does question the validity of the '638 Patent.

# CONCLUSION

Based upon the foregoing, Plaintiff has not demonstrated a likelihood of success on the merits or irreparable injury. Plaintiff was not able to prove that ProSlab 150 infringes the '638 Patent and the infringement claim will likely withstand FireFly's challenges to the validity and enforceability of the patent. Plaintiff's Motion for Preliminary Injunction is **DENIED**. Defendant's Motion to Strike the Affidavit of Gregg Tvetene is **MOOT**.

DATED this 17th day of April, 2013.

/s/ Richard F. Cebull_____
RICHARD F. CEBULL
SENIOR U.S. DISTRICT JUDGE